**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JUAN CARLOS RODRIGUEZ                                                    PLAINTIFF
ADC #156405

V.                              NO:  1:15CV00022 BSM/PSH

JOSEPH PAGE, *et al.*                                                    DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to Chief United

States District Judge Brian S. Miller.  You may file written objections to all or part of this

Recommendation.  If you do so, those objections must:  (1) specifically explain the factual and/or

legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14)

days of this Recommendation.  By not objecting, you may waive the right to appeal questions of

fact.

**DISPOSITION**

**I.  Procedural History**

Plaintiff Juan Carlos Rodriguez, an inmate at the Grimes Unit of the Arkansas Department

of Correction (ADC), filed a *pro se* complaint on February 9, 2015.  Defendants are Grimes Unit

Assistant Warden Joseph Page, Warden Aundrea Weekly,[1] Dr. Melvin Nance, and RN Brenda

Bridgeman.  Rodriguez is suing the defendants in their official and personal capacities.

Chief Judge Miller previously dismissed for failure to exhaust all but one claim against

---

[1]Weekly has changed her last name to Fitzgerald. Doc. No. 85-2. For the sake of simplicity,
the Court will continue to refer to her as Weekly.

Bridgeman and Nance. Doc. No. 78. Bridgeman and Nance filed a motion for summary judgment on the merits, a brief in support, and a statement of facts on September 22, 2016. Doc. Nos. 82-84. Page and Weekly filed a motion for summary judgment on the merits, a statement of facts, and a brief in support on September 23, 2016. Doc. Nos. 85-87. Rodriguez has filed a response, two briefs in support, a declaration, and a statement of facts. Doc. Nos. 91-95. Page and Weekly filed a reply on November 4, 2016. Doc. No. 96. On May 3, 2017, the Court held a hearing on Page and Weekly's motion for summary judgment where Rodriguez and Page gave testimony.

For the reasons set forth below, the Court recommends that the motions for summary judgment be granted, and the complaint be dismissed.

## II. Rodriguez's Complaint

Rodriguez has been a paraplegic for 17 years. In late December of 2013, Rodriguez was transferred from the ADC Diagnostic Unit to the Grimes Unit, and placed in the "ADA barracks," designed for inmates who have disabilities or require special care. Doc. No. 2, page 4. Rodriguez asserts that the facility was not equipped to accommodate a person with his needs. He states that he wrote several requests to Weekly regarding these problems, and eventually filed grievances seeking a transfer back to the Diagnostic Unit, which he claims is better equipped for someone with his needs. *Id.,* pages 4 & 6.

Rodriguez claims that because of deficient shower accommodations, he fell on February 1, 2014, from a portable shower chair given to him by the medical department at the Grimes Unit. *Id.,* page 6. Rodriguez asserts that Page and the Grimes Unit are using him as "a guinea pig to bring the unit up to standards" to house paraplegics, and he has had to endure pain, suffering, and humiliation in the process. *Id.,* page 7.

2

In his complaint, Rodriguez also asserts claims of inadequate medical treatment and medical supplies against Bridgeman and Nance. *Id.*, pages 7-8. Chief Judge Miller, however, dismissed for failure to exhaust all but one claim against Bridgeman and Nance. Doc. No. 78. In the surviving medical claim, found in grievance GR-14-00394, Rodriguez complains that he was not provided a sufficient number of catheters each week. Doc. No. 2, pages 64-68. Rodriguez claims the reduction in the number of catheters provided amounted to deliberate indifference to his medical needs, and was racially motivated or done in retaliation for his complaints about the Grimes Unit's facilities.[2]

### III.  Standard of Review

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322-23. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson v. Liberty*

---

[2]Rodriguez alleged in his complaint "I have also come to the conclusion that the trietment [sic] or lack thereof has been inflicted on me due to the fact that I am Mexican (Hispanic) and it's a racial issue that I have been made to suffer." Doc. No. 2, page 9. Rodriguez's retaliation claim is found in his appeal of grievance GR-14-00394, where he alleged that his reduced catheter allotment was due to retaliation by Page. Doc. No. 2, page 68.

3

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV. Analysis

A.    <u>RN Bridgeman and Dr. Nance</u>

Rodriguez's only remaining claim against Bridgeman and Nance is that they failed to provide him a sufficient number of catheters each week, as he set forth in grievance GR-14-00394. In that grievance, Rodriguez complained:

> I was getting 3 catheters per week and today I was told that I would be getting only 1 (one) per week. I am being put at risk of infection by using only one catheter all week. It is bad enough that I am not given gloves, soap, etc. for the changing of the catheters.

Doc. No. 55-1, page 11. Rodriguez is essentially claiming that Bridgeman and Nance denied him adequate medical care when they reduced his catheter allotment to one per week. Bridgeman and Nance assert they are entitled to summary judgment because they were not deliberately indifferent to his medical needs, and his claims against them amount to nothing more than a disagreement with medical care.

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed with an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

According to Rodriguez's medical records, Nance issued a new order on March 19, 2014, to reduce the number of catheters provided to one catheter a week. Doc. No. 84-1, pages 10-12. The records note that this new order was issued after Nance consulted with a urologist, Robert Emery, M.D., about Rodriguez's care and treatment. *Id.* In an affidavit supporting the motion for summary judgment, Nance states:

> I had seen Mr. Rodriguez and/or reviewed records and entered orders on his behalf a few times prior to the decision to reduce his [sic] the frequency of catheters issued. At the time, we were working to ensure we could properly care for Mr. Rodriguez. We had a representative from the Spinal Cord Commission come to the unit to advise us as to facilities and medical care. I also spoke to a urologist in Batesville, Dr. Robert Emery, regarding Mr. Rodriguez's care and treatment. We were working diligently to ensure we took proper care of the patient. We discussed the results of our consultations and our plan of care with Mr. Rodriguez.
>
> Regarding the catheters, on March 19, 2014, after consulting with Dr. Emery, I changed the orders from Mr. Rodriguez receiving three Foley catheters a day to him receiving one catheter per week, on Wednesdays. Dr. Emery told me that it is their standard urological practice in such situations to recommend only one catheter *per month*. He then sent me a copy of his instruction form on this matter. Dr. Emery's instruction form provides that one catheter will be used each month: "The procedure is clean, not sterile, and is well tolerated. You will need a soft plastic 14-16 French catheter each month."
>
> I discussed my consultation with Dr. Emery at length with Billy Cowell, Health Service Administrator. In an abundance of caution, we decided to provide the catheters more frequently than recommended–once per week rather than once per month. Mr. Rodriguez was informed of this change and instructed to wash the catheter out after each use and place back in the package until needed to use for in/out self catheterization. He was given a copy of Dr. Emery's instruction sheet.
>
> . . . Neither myself nor Ms. Bridgeman were indifferent to Mr. Rodriguez's urinary needs. In my professional medical opinion, Mr. Rodriguez received appropriate and satisfactory medical care for his paraplegia urinary needs in 2014 when I worked at the unit, particularly relating to my March 2014 catheter order. My conclusions are consistent with sound medical practices and my own professional judgment.

Doc. No. 84-2 (references omitted). Additionally, according to Nance's affidavit, Bridgeman was not involved in the decision to reduce the number of catheters provided, and her only role was to

5

enter Nance's orders. *Id*. This statement is supported by the medical records.

In his response to the summary judgment motion, Rodriguez does not offer any evidence to support his position that Nance and Bridgeman were deliberately indifferent to his serious medical needs. Additionally, Rodriguez does not challenge the evidence presented by Nance and Bridgeman in support of their motion. The undisputed facts establish that Bridgeman was not involved in the decision to reduce the number of catheters provided to Rodriguez; that Nance was attentive to the serious medical needs of Rodriguez; that he consulted with the Spinal Cord Commission, a urologist, and the Health Services Administrator in assessing Rodriguez's needs; that out of an abundance of caution, he issued an order providing Rodriguez with more catheters than the outside expert recommended; and that he provided Rodriguez with instructions regarding the care and cleaning of the catheters. In no way can these actions constitute deliberate indifference to Rodriguez's serious medical needs.

Rodriguez's claim that he was not provided adequate supplies to clean the catheters also fails. *See* Doc. No. 92. Emery's instruction sheet, which was provided to Rodriguez, calls for catheters to be rinsed "with water ONLY." Doc. No. 84-1, page 15 (emphasis in original). It is clear from Rodriguez's testimony that he has access to water at the Grimes Unit. Doc. No. 84-3, pages 2-3.

Finally, Rodriguez's personal disagreement with Nance's decision and instructions is not actionable. *See Dulany v. Carnahan*, 132 F.3d at 1240 (in the face of medical records indicating that treatment was provided, and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he does not believe he received adequate treatment). There was no deliberate indifference, and Bridgeman and Nance are entitled

6

to summary judgment.

B.      Assistant Warden Page and Warden Weekly

Rodriguez claims that Page and Weekly failed to ensure that the Grimes Unit is in compliance with the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*; that they were deliberately indifferent to his safety because the showers at the Grimes Unit were not equipped for him to safely use them; and that Page reduced the number of catheters Rodriguez received each week in retaliation for his filing grievances or due to a discriminatory motive. These defendants assert they should be granted summary judgment because Rodriguez's ADA claims for injunctive relief are moot; they are immune from such claims in their individual capacities; they were not deliberately indifferent to Rodriguez's safety in connection with his fall in the shower; they were not deliberately indifferent to his medical needs; and they did not deny medical care for any discriminatory or retaliatory motive. Page and Weekly also argue they are entitled to sovereign and qualified immunity. In addition to the parties' briefs, the Court held a hearing on Page and Weekly's motion for summary judgment on May 3, 2017. At that hearing, Rodriguez and Page provided sworn testimony.

*1. Deliberate Indifference*

Rodriguez alleges Page and Weekly violated the Eighth Amendment by forcing him to use an inappropriate shower chair, which resulted in his fall. In essence, Rodriguez is advancing an Eighth Amendment conditions of confinement claim. To prevail on a conditions of confinement claim, an inmate must show: (1) the condition was serious enough to deprive him of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmate's health and safety. *Smith v. Copeland*, 87 F.3d

265, 268 (8th Cir.1996); *Frye v. Pettis County Sheriff Dept.*, 41 Fed.Appx. 906 (8th Cir. 2002)

(unpub. per curiam). In order to support an Eighth Amendment violation, a plaintiff must prove the

existence of objectively harsh conditions of confinement, together with a subjectively culpable state

of mind by prison officials in condoning or creating the conditions. *Choate v. Lockhart*, 7 F.3d

1370, 1373 (8th Cir. 1993). The "defendant's conduct must objectively rise to the level of a

constitutional violation by depriving the plaintiff of the 'minimal civilized measure of life's

necessities.' . . . The defendant's conduct must also reflect a subjective state of mind evincing

deliberate indifference to the health or safety of the prisoner." *Revels v. Vincenz,* 382 F.3d 870, 875

(8th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981) and *Estelle v. Gamble*, 429

U.S. 97, 104 (1977)). "To be cruel and unusual punishment, conduct that does not purport to be

punishment at all must involve more than ordinary lack of due care for the prisoner's interest or

safety. . . ." *Wilson v. Seiter*, 501 U.S. 294, 298-9 (quoting *Whitley v. Albers*, 475 U.S. 312, 319

(1986)).

  Rodriguez testified at the May 3 hearing that the chair provided to him for showering

purposes was a "regular" plastic chair with arms. He further testified that his fall from the chair took

place when the chair became slippery while showering and when he leaned to the side to wash

himself.[3] Finally, Rodriguez testified that he transferred himself from his wheelchair to the shower

chair and back without assistance from any ADC staff, and that ADC staff were not present in the

showers at the time of the fall.

  The record shows that after Rodriguez fell, the ADC-installed fold-down shower chairs

---

  [3]Pleadings filed by the parties suggest, however, that a "shower chair" was provided by
medical staff at the unit for use by Rodriguez.

which were affixed to the shower wall. The ADC has provided documentation that the new shower chairs are ADA compliant.

The Court must first determine if Page and Weekly were actually aware that a chair as described by Rodriguez had been provided to him for showering, and if that chair objectively subjected him to a substantial risk of serious harm. As to Weekly, Rodriguez has failed to establish, without resorting to speculation or conjecture, that she was aware of the conditions about which he complains before his fall. Rodriguez testified that he never saw or spoke to Weekly about the shower chair or his safety concerns before his fall. Rodriguez filed grievances about his showering situation, and Weekly ultimately responded to those on appeal to the Warden. However, all but one of those grievances were filed *after* Rodriguez fell in the shower. And Weekly's response to the grievance filed before the fall is dated after the fall, after progressing through the grievance process. *See* Doc. No. 2, pages 20, 23, 26, and 42. Accordingly, even assuming that the chair provided to Rodriguez for showering subjected him to a substantial risk of serious harm, the undisputed facts fail to establish that Weekly was aware of its use and was deliberately indifferent to his health and safety. She is therefore entitled to summary judgment on Rodriguez's conditions of confinement claim.

As to Page, Rodriguez testified at the May 3 hearing that he raised his concerns about the shower issue with Page before he fell. He testified that in response, Page attempted to intimidate him and told him everything he needed to take a shower was provided. Page testified he did not recall this conversation. Page further testified that when he learned a paraplegic was being moved to the prison, he reviewed an ADA compliance manual. He asserted in his testimony that the prison was in compliance with ADA standards before Rodriguez fell, but offered no documentation to

substantiate this assertion.[4]   It is not clear from the record before the Court whether the prison showers were in fact ADA compliant before stationary shower chairs were installed.[5]

Fact issues exist regarding whether Page was made aware of Rodriguez's showering complaints before the fall; whether the showers made available to Rodriguez were ADA compliant before the fall; and what kind of chair was provided to Rodriguez, and by whom, for use in showering.

Despite the existence of fact questions relating to the Eighth Amendment claim against Page, he is still entitled to summary judgment because Rodriguez's injuries were, at best, *de minimis*. "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).   Additionally, under the Prison Litigation Reform Act, a prisoner must show an actual physical injury to sustain a claim for relief.   *See* 42 U.S.C. § 1997e(e).   The Eighth Circuit Court of Appeals has found injuries such as scrapes, scratches, and bruises to be *de minimis* injuries.   *See, e.g.*, *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir.2006) (finding relatively minor scrapes and bruises and a less-than permanent shoulder aggravation to be *de minimis*); *Wyatt v. Delaney*, 818 F.2d 21, 23 (8th Cir.1987) (finding two small scratches inside a prisoner's mouth following an accidental blow to the face *de minimis*).   While not of precedential value, the Court finds the following description of *de minimis* injury instructive:

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.  People

---

[4]The documentation offered by Page and Weekly about ADA compliance establishes that the shower chairs installed *after* Rodriguez's fall were in compliance with ADA requirements.

[5]ADA non-compliance in and of itself may not establish a constitutional violation. However, it is a factor the fact-finder can consider in determining whether prison officials were deliberately indifferent.

> in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. . . . Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of [42 U.S.C. §1997e(e)].

*Luong v. Hatt,* 979 F. Supp. 481, 486 (N.D. Tex. 1997).

Here, Rodriguez testified at the May 3 hearing that after falling on his left side in the shower, he had scratches on his elbow, and swelling and bruising on his leg and knee.  X-rays were taken which showed no injury.  Rodriguez testified he received band-aids for his elbow scratches, and those scratches healed.  He further stated his swelling and pain were treated with the over-the-counter medication acetaminophen.   The Court finds that because Rodriguez suffered only *de minimis* injuries from his fall, he cannot recover on his Eighth Amendment conditions of confinement claim.   Accordingly, summary judgment should be granted in favor of Page on Rodriguez's Eighth Amendment claim.

### 2.  ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

State prisons, such as the ADC, constitute public entities as defined by Title II of the ADA. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  Rodriguez, however, has not named the ADC as a defendant, instead naming Warden Weekly and Assistant Warden Page as defendants.  United States District Judge J. Leon Holmes addressed whether an ADC warden, as opposed to the ADC entity, is a proper defendant in a Title

II ADA case:

> ...Cade has not named the Arkansas Department of Correction as a defendant. Instead, he has only named Warden Williams. An ADA claim can be brought against a state actor, such as Williams, only in his official capacity. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014); *Randolph v. Rodgers*, 253 F.3d 342, 344 (8th Cir. 2001). Cade cannot recover monetary damages against Williams in his official capacity. *Randolph*, 253 F.3d at 344. Similarly, any request for prospective injunctive relief against Defendant Williams, in his official capacity, is now moot because Plaintiff is no longer in the Tucker Unit. *Id.* at 345-46. Thus, Cade has failed to name a proper defendant to his ADA claim.

*Cade v. Williams*, No. 5:14CV00046 JLH/JTR, 2014 WL 5529743, at *2 (E.D. Ark. Oct. 31, 2014).

Applying the findings in *Dinkins* and *Randolph*, as applied by Judge Holmes, to this matter, Rodriguez can bring an ADA claim against Weekly and Page only in their official capacities, and not in their individual capacities. He cannot recover monetary damages against them in their official capacities. Rodriguez can, however, request prospective injunctive relief for ADA violations from Weekly and Page in their official capacities. However, Rodriguez's claim for prospective injunctive relief is moot. The undisputed facts establish that after Rodriguez fell, certain shower stalls at Grimes were equipped with a fixed drop-down seat for use by disabled inmates, and a ramp was also added. Doc. No. 85-1. In his deposition testimony, Rodriguez confirmed these additions. Doc. No. 85-3, page 5. Page and Weekly have presented evidence that the Grimes Unit is in compliance with the ADA. Doc. Nos. 85-4 & 85-6. In particular, the Court notes that Rodriguez's complaint regarding the portable chair have been addressed, and the unit now has fixed seats in the showers. Doc. No. 85-6.[6] *See Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 355 (8th

---

[6]Rodriguez did not identify any injury he sustained which was caused by kitchen and dining facilities, although he vaguely complained they were inadequate. However, Page and Weekly did provide evidence that both the kitchen and dining facilities were found by a representative from the

Cir. 1998) (request for injunctive relief moot if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur). Because Rodriguez's request for injunctive relief under the ADA is moot, because Rodriguez cannot recover money damages against Weekly and Page in their official capacities, and because there is no individual liability for ADA violations, Page and Weekly are entitled to summary judgment as to Rodriguez's ADA claim.

### 3. Retaliation and Discrimination

Finally, Rodriguez claims that Page influenced the decision to reduce his catheter allotment in retaliation for grievances he filed, or possibly because of his race. Page has filed an affidavit stating he is not a medical professional, did not make any decision regarding Rodriguez's catheters, and deferred to the licensed staff at the Grimes Unit for medical situations. Doc. No. 85-1. As discussed above, Nance determined Rodriguez needed only one catheter per week after he consulted with a urologist. Rodriguez has offered no evidence to refute the testimony of Page and Nance. Thus, because Page had no role in the medical decision making, Rodriguez's claim that the catheter reduction was based on a discriminatory or retaliatory motive should be dismissed. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (unequal treatment of persons entitled to be treated alike not an equal protection violation without an element of intentional or purposeful discrimination); *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996) (inmate claiming retaliation is required to meet substantial burden of proving actual motivating factor for adverse action was as alleged); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (allegations of retaliation must be more than speculative and conclusory). Because there was no discrimination or retaliation, Page is entitled to summary judgment on this claim.

---

Spinal Cord Commission to be in compliance with Rodriguez's needs. Doc. No. 85-4.

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' motions for summary judgment on the merits be GRANTED, and plaintiff Juan Carlos Rodriguez's complaint be DISMISSED WITH PREJUDICE with respect to his claims against defendants Page and Weekly, and with respect to his catheter allotment claims against defendants Nance and Bridgeman.

2.      The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 9th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE